**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GAIL HENDRICKS, | ) | CASE NO.    1:14-cv-02172 |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social Security | ) | **REPORT & RECOMMENDATION** |
| | ) | |
|       Defendant. | ) | |

Plaintiff Gail Hendricks ("Hendricks") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

### I.  Procedural History

On January 14, 2012, Hendricks filed an application for POD and DIB alleging a disability onset date of March 1, 2011.  (Tr. 11.)  Her application was denied both initially and upon reconsideration.  *Id*.

On May 14, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Hendricks, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 11.) On June 6, 2013, the ALJ found Hendricks was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 18.)  The ALJ's decision became

final when the Appeals Council denied further review.

## II.  Evidence

### Personal and Vocational Evidence

Age sixty-two (62) at the time of her administrative hearing, Hendricks is a person of "advanced age" under social security regulations.  *See* 20 C.F.R. § 404.1563(e).  (Tr. 15.) Hendricks has a high school education and past relevant work as a sales associate assistant.  *Id*.

### Relevant Medical Evidence[1]

On November 4, 2010, several months prior to the alleged onset date, Hendricks was seen by Brian M. Wolovitz, M.D.  (Tr. 384.)  His treatment notes did not include any diagnosis or mention of headaches.  *Id*.

On December 29, 2010, Dr. Wolovitz noted Hendricks had complained of having more headaches recently.  (Tr. 383.)

On January 21, 2011, Dr. Wolovitz noted that Hendricks had no physical complaints. (Tr. 382.)

On April 15, 2011, a little over a month after her alleged onset date, Hendricks was again seen by Dr. Wolovitz.  He did not note any complaints of  headaches or diagnose migraines.  (Tr. 379.)  On April 29, 2011, Hendricks again visited Dr. Wolovitz with no complaints of headaches. (Tr. 377.)

On June 3, 2011, Dr. Wolovitz noted headaches among Hendrick's history of ailments. (Tr. 375.)

On August, 9, 2011, Dr. Wolovitz listed chronic headaches in his assessment, which he hoped would improve with a prescription for Verapamil.  (Tr. 374.)

On August 29, 2011, Hendricks was seen by Gregg H. Faiman, M.D.  (Tr. 372.)  No

---

[1]  Given Hendricks' sole assignment of error alleges that the ALJ failed to adequately account for her limitations based on her migraine headaches, the Court recounts only Hendricks' medical history of headaches near the alleged onset date, March 1, 2011, and thereafter.  In addition, the Court also includes the opinions of various medical sources regarding Hendricks' physical functional limitations.

mention was made of headaches.  (Tr. 372.)

On September 20, 2011, Hendricks made no mention of headaches during a "BP check" with Dr. Wolovitz, though "Migraine, on prophylaxis" was included in the assessment/plan.  (Tr. 369.)

On December 12, 2011, Dr. Wolovitz included migraines in his assessment but treatment notes do not discuss any complaints of headaches.  (Tr. 365.)  On the same date, Dr. Faiman indicated that Hendricks was still taking Verapamil but did not otherwise discuss or mention headaches.  (Tr. 368.)

On March 9, 2012, Dr. Faiman noted that Hendricks had no physical complaints.  (Tr. 364.)

On March 14, 2012, Hendricks reported to Dr. Wolovitz with right shoulder pain.  (Tr. 363.)  Headaches or migraines were no longer included in his assessment/plan.  *Id*.

On June 8, 2012, "Migraine, on prophylaxis" was included in Dr. Wolovitz's assessment.  (Tr. 362.)

On July 11, 2012, State Agency medical consultant, Gerald Klyop, M.D., completed a Physical Residual Functional Capacity ("RFC") Assessment.  (Tr. 74.)  Dr. Klyop opined that Hendricks could occasionally lift twenty pounds and frequently lift ten pounds, stand/walk for six hours in an eight-hour workday, and sit for six hours.  *Id*.

On July 31, 2012, while migraines were noted in Hendricks' medical history, Dr. Wolovitz's treatment notes contain no complaints of headaches nor was there an assessment as to migraines.  (Tr. 361.)

On September 14, 2012, chronic headaches reappears in Dr. Wolovitz's assessment of Hendricks.  (Tr. 360.)

On September 20, 2012, State Agency medical consultant, Anton Freihofner, M.D., completed a physical RFC Assessment.  (Tr. 84-85.)  Dr. Freihofner opined that Hendricks could occasionally lift twenty pounds and frequently lift ten pounds, stand/walk for six hours in an eight-hour workday, and sit for six hours.  *Id*.

Between October 2012 and May 2013, Hendricks recorded dates on which she allegedly

3

had headaches.  (Tr. 596.)  She recorded two days in October, seven days in November, nine days in December, four days in January, three days in February, three days in March, three days in April, and two days in May.  *Id.*

***Relevant Hearing Testimony***

During the hearing, Hendrick's counsel examined her leading to the following exchange concerning her migraines:

> Q:      Is there anything else beside your back problem that prevents you from working?
>
> A:      Migraines.
>
> * * *
>
> Q:      Okay.  Tell me about your migraines.
>
> A:      Well, they're frequent.  I've been getting them for years and years and years.
>
> * * *
>
> A:      ... because my migraines usually start around 3:00, 4:00, 5:00 in the morning and I usually – it's unstoppable, really.  I don't know of any [INAUDIBLE] could not stop a migraine.  So, there's nothing I can do but go back to bed, lay in a dark room with a cold cloth on my head with a bucket next to me because I do vomit.  And it's the most horrific experience that you can, you know, feel because it's a pounding.  It just feels like a hammer is just pounding, you know, in your head and I can't eat, I can't get up, I can't hear any noise, I can't smell anything.  You know, you just have to lay there and they last from four to eight hours so.  I get vertigo, also, with it.  So, that's dizziness.  So, I can't get up and walk, but it's – I don't know how else to explain it except that you don't ever want to have to have them as often as I do.
>
> * * *
>
> So if I feel one coming and sometimes you can I will try to stop it.  But when I say try to stop it, I take a Imitrex, I take four Motrin, and two Tylenol.  Now I don't know if my doctor knows I do all that but that's the only way I could try to stop it.  But like I said, they usually come early in the morning, so when I wake up it's there and it's not stoppable so I – there's no sense in taking the Imitrex.

(Tr. 44-46)

Hendricks further testified that she suffered from migraines for decades, but that they became more severe as she aged.  (Tr. 46-47.)  She stated that the migraines could occur a couple times per week.  (Tr. 49.)

4

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Hendricks was insured on her alleged disability onset date, March 1, 2011, and remained insured through the date of the ALJ's decision, June 6, 2013.  (Tr. 11.)  Therefore, in order to be entitled to POD and DIB, Hendricks must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV.  Summary of Commissioner's Decision

The ALJ found Hendricks established medically determinable, severe impairments due to degenerative disc bulging of the lumbosacral spine and history of migraine headaches.  (Tr. 13.)  However, her impairments, either singularly or in combination, did not meet or equal one listed

---

[2]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 13-14.) Hendricks was found capable of performing her past relevant work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 14, 17.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Hendricks was not disabled. (Tr. 17-18.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the

regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

Hendricks claims the ALJ erred by failing to consider her impairments in combination. Specifically, Hendricks asserts that the ALJ failed to consider the impact of her migraine headaches when determining her residual functional capacity ("RFC").  (ECF No. 9 at 6-8.)

The Court does *not* construe Hendricks' brief as arguing that the ALJ failed to consider her impairments in combination when determining that she did not meet or medically equal the Listings.  The claimant has "the burden of showing that his [or her] impairments were equal or equivalent to a listed impairment." *Malone v. Comm'r of Soc. Sec.*, 507 Fed. App'x. 470 (6th Cir. 2012) (*citing Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)); *see also Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings."); *see also Rowe v. R.R. Ret. Bd.*, 114 Fed. App'x. 189, 194 (6th Cir. 2004) (finding that where the hearings officer specifically addressed the

7

"combination" of impairments in her findings, there was "sufficient consideration of the combination of ailments, not requiring further analysis.") (*citing Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  Here, the ALJ specifically found that Hendricks "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments ..."  (Tr. 13.)  Moreover, Hendricks has not identified any listing that was medically equaled by the combination of her impairments.  As such, the Court turns to Hendricks' argument that the RFC failed to accommodate her migraine headaches.

The RFC determination sets out an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R.§ 404.1527(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 404.1527(d)(3).  As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence.  *See* 20 C.F.R. § 404.1546(c).  "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at **21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).  Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide a basis for overturning the RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at **21-22.

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those

limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence.  *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

While Hendricks asserts that the RFC failed to accommodate her migraine headaches, she does not identify any specific or particular limitations resulting from her migraines that should have been part of the RFC.  The ALJ incorporated a number of non-exertional limitations into the RFC assessment, including prohibitions against climbing ladders, ropes or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling and climbing of ramps or stairs; and a prohibition against all exposure to hazards.  (Tr. 14.)  In her argument, Hendricks does not direct this Court's attention to any evidence, medical or otherwise, suggesting she has any greater limitations relating to her migraines than those identified by the ALJ above and incorporated into the RFC.  (ECF No. 9.)  Even in the limited discussion of the medical evidence contained in her brief, Hendricks fails to direct this Court's attention to any evidence indicating her treating physician, Dr. Wolovitz (or other physician), assessed any particular restrictions related to her migraines.  (ECF No. 9 at 4-5.)

Rather, the crux of Hendricks' argument appears to be based on her own subjective testimony that she suffers up to a couple of migraines a week, lasting four to eight hours each.  However, the ALJ expressly found that Hendricks' allegations as to the limiting effects of her symptoms were "not fully credible."  (Tr. 15-16.)  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  Notably, Hendricks has not argued that the ALJ's credibility assessment failed to comport with the regulations.  As such, Hendricks' argument amounts to an invitation for this Court to conduct an improper *de novo* review of the evidence.[3]

---

[3]  To the extent Hendricks is arguing that migraine headaches itself was not included among the limitations set forth in the hypothetical posed to the VE, such an argument would be

9

Hendricks has failed to establish that the VE's testimony was given in response to an inaccurate hypothetical.  Therefore, substantial evidence supports the Step Five finding that Hendricks could perform her past relevant work.  As such, Hendrick's sole assignment of error is without merit.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White_____
United States Magistrate Judge

Date: August 7, 2015

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

without merit.  In *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004), the Sixth Circuit rejected a similar argument that an ALJ is required to list a claimant's medical conditions in the hypothetical question posed to a VE for the hypothetical to be considered complete and accurate.  The *Webb* decision explained that "a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Id*. (citations omitted).